1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## EASTERN DISTRICT OF CALIFORNIA

10

| | | |
|---|---|---|
| RACHEL ESCUTIA, | ) | 1:10-cv-0477 LJO-BAM |
| Plaintiff, | ) | **FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

11
12
13
14
15
16
17
18

## **BACKGROUND**

19    Plaintiff Rachel Escutia ("Plaintiff") seeks judicial review of a final decision of the

20  Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

21  supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act.  The

22  matter is currently before the Court on the parties' briefs, which were submitted, without oral

23  argument, to Magistrate Judge Barbara A. McAuliffe, for findings and recommendations to the

24  District Court.

25  ///

26  ///

27
28

1

## FACTS AND PRIOR PROCEEDINGS[1]

2    On September 30, 2004, Plaintiff filed her first applications for disability insurance benefits

3    (DIB) and supplemental security income (SSI) under Titles II and XVI, respectively, of the Social

4    Security Act (the Act), alleging disability beginning November 1, 2003. AR 62. These applications

5    were ultimately denied by an Administrative Law Judge (ALJ), who issued a July 2006 decision

6    finding Plaintiff not disabled.  AR 60-67. Plaintiff did not appeal this ALJ decision.

7    On November 14, 2006, Plaintiff reapplied for disability insurance and supplemental security

8    income benefits, alleging disability beginning November 1, 2003.  *See* AR 166-68, 169-76.

9    Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing

10    before an ALJ.  AR 60-67.  ALJ Michael J. Kopicki held a hearing on May 7, 2009, and issued an

11    order denying benefits on July 28, 2009, finding Plaintiff was not disabled.  AR 5-16.  This appeal

12    followed.

13    **Medical Record**

14    The record is summarized here in chronological order with particular regard to the reports

15    of J. Luis Bautista, M.D., Adi Klein, M.D, and Greg Hirokawa, M.D. Nonetheless, the record as a

16    whole was reviewed and will be specifically referenced as necessary to this Court's decision.  AR

17    278-517.

18    Plaintiff began receiving treatment for her Pemphigus Vulgaris in 2004. AR 352-98.  In June

19    2005, Plaintiff went to the hospital for a fever and sore throat. AR 315. She was diagnosed with strep

20    throat, given medication, observed for a few hours, then discharged ambulatory and with a steady

21    gait. AR 317-18.

22    In February 2006, Plaintiff went to the hospital for having a walnut stuck in her throat. AR

23    305.  A computed tomography (CT) scan was normal and showed no soft tissue mass, no epiglottitis,

24    no displacement, no narrowing of the airway, and no foreign object.  AR 320. Plaintiff was given

25    Maalox and lidocaine, observed for a time, and was discharged and directed to follow-up with her

26    primary care doctor.  AR 310.  Three months later, in May 2006, Plaintiff visited her physician J.

27

28    ───────────────

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Luis Bautista, M.D., with complaints of back pain. AR 454. She also had a sore on her ring finger; Dr. Bautista lanced her sore and told her to keep the area clean. AR 454.  In July 2006, Plaintiff sought treatment for a blister on her arm approximately 1 inch wide and 1 inch tall and an excoriated blister on her underarm.  AR 452. Dr. Bautista prescribed medication and directed Plaintiff to keep the area dry and clean. AR 452.  At another visit later that same month, Plaintiff complained of back pain due to a fall.  AR 451. In September 2006, Plaintiff visited the hospital with complaints of blisters in her arm pit area. AR 301. She was given antibiotics and pain medication and directed to follow-up with her primary care doctor. AR 303.

From November 2006 through May 2007, Plaintiff attended regular medication management appointments for her pemphigus. AR 340-49, 481-90. Plaintiff discontinued the medication on May 11, 2007, at which time she reported having "no" pain. AR 480.

In November 2006, Plaintiff visited Denise E. Greene, M.D., at Bautista Rural Medical Clinic, complaining of a blister on her abdomen.  AR 448. Dr. Greene prescribed Levaquin medication for 7 days and directed Plaintiff to return if it did not improve.  AR 448. Plaintiff next visited the clinic in April 2007, at which time she had no lesions and her neck was supple with no masses.  AR 447. She had an infection in her finger.  AR 447.

In March 2007, Plaintiff was examined by psychologist Greg Hirokawa, Ph.D. AR 399-403. Plaintiff gave marginal effort during the exam.  AR 399. Plaintiff told Dr. Hirokawa that she had been getting mental health treatment for over two years and had attempted suicide on four occasions. AR 400. Upon examination, Dr. Hirokawa opined that Plaintiff's symptoms of depression were within the "mild" range.  AR 402. Thereafter, Social Security staff called to ask Plaintiff about her mental health treatment, and Plaintiff admitted that she did not receive any mental health treatment and had not gone to the hospital or been seen for the alleged "suicide attempts." AR 240, 429.

In April 2007, Plaintiff was examined by state agency physician Adi Klein, M.D.  AR 404-08. At the time of the exam, Plaintiff had one sore in the back of her mouth and tongue fissures, with no pharyngeal hyperemia (no accumulated blood flow in the throat). AR 405. Upon examination, Plaintiff checked out as normal with her knees and ankles experiencing  "mild effusion" with no deformity, normal range of motion, and no instability.  AR 406-07.  Dr. Klein took

1  Plaintiff's reported pemphigus into account and opined that "due to autoimmune disease," Plaintiff

2  was limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently, standing and

3  walking for 2 hours, and sitting for 6 hours.  AR 407. Dr. Klein opined that Plaintiff had no postural,

4  manipulative, visual, communicative, or environmental limitations.  AR 407.

5  Plaintiff returned to Bautista Clinic in May 2007 for bloodwork; she reported feeling "sleepy,

6  lazy, unable to do any kind of work, [and had] body aches." AR 446.  The following month, she was

7  diagnosed with Type 2 diabetes mellitus, a B12 vitamin deficiency, and low iron.  AR 444. Plaintiff

8  did not complain of blisters at this appointment. AR 444, 446. At follow-up appointments in July

9  2007, Plaintiff said she felt "much better" and had no lesions and her neck was supple with no

10  masses.  AR 442, 443.

11  In August 2007, Plaintiff had a biopsy of a 4 mm x 4 mm section of her tongue. AR 478-79.

12  The treating pathologist's initial diagnosis was a "condyloma," which is a wartlike growth on the

13  skin or mucous membrane.  AR 478. However, although the tissue sample contained an ulcer and

14  inflammation throughout, it had no "cytomorphologic" cell structure changes that would support a

15  diagnosis of condyloma.  AR 478. There was no evidence of a papilloma virus.  AR 478. There was

16  no fungi/yeast nor other abnormal substances.  AR 478. The pathologist suggested that a possible

17  cause was "prolonged physical stimulation/irritation (such as by a dental prosthesis or a

18  malaligned tooth)." AR 478.

19  In October 2007, Plaintiff visited Erik Strom, M.D. complaining of neck pain.  AR 505.

20  X-rays showed that Plaintiff's cervical spine had normal alignment and curvature; intact disc spaces;

21  and no evidence of acute trauma or any other significant pathology.  AR 505. Dr. Strom concluded

22  that Plaintiff had a "normal cervical spine." AR 505. X-rays of the thoracic and lumbar spine showed

23  a mild compression fracture (which may be acute), normal disc space height, intact pedicles, and

24  normal paravertebral soft tissues.  AR 506-07. Dr. Strom also noted that Plaintiff had a "normal

25  lumbar spine." AR 507.

26  In November 2007, Plaintiff complained of an oral blister and her physician increased her

27  medication dosage.  AR 476. Plaintiff returned three months later and said that her tongue was

28

"better." AR 475. In June 2008, Plaintiff visited her physician but did not complain of any lesions. AR 474.

In October 2008, Plaintiff visited her physician and requested a different treatment for her pemphigus. AR 472. Two months later, she said that the new medication did not help. AR 471. The following month, January 2009, her doctor described the sores as "poorly controlled," prescribed a new medication, and told her to return in one month. AR 470. The physician's assistant also noted a blister. AR 494. In February 2009, her physician observed a "slight improvement" and scheduled her for a followup in one month. AR 469. In March 2009, Plaintiff's physician observed another "slight improvement." AR 466. On March 17, 2009, Plaintiff visited the doctor for back pain; she had no lesions at that time. AR 492. A few weeks later, she had a blister in her mouth. AR 491.

In April 2009, Dr. Bautista, provided a medical source statement in preparation for Plaintiff's Social Security Hearing. AR 511-16. He opined that her overall condition was very weak, and limited by fatigue. "Plaintiff tires very easily when her symptoms are active." AR 512.

**2009 Hearing Testimony**

ALJ Kopicki held a hearing on July 28, 2009, in Fresno, California. Plaintiff appeared and testified. She was represented by attorney Robert Ishikawa. Vocational Expert ("VE") Cheryl R. Chandler also testified. AR 8.

Plaintiff was born on April 8, 1961 and was forty-eight years old at the time of the hearing. She is five feet three inches tall and weighs about 178 pounds.[2] AR 8-9. At the time of the hearing, Plaintiff testified that she is a widow and lives with her daughter, her daughter's two children, and her son's child (Plaintiff's grandson), whom she raises with the help of aid and food stamps. AR 12. She has an 11th grade education with no additional formal training or vocational training. AR 12. Plaintiff said that she previously worked as a caregiver, but stopped working because she was "tired" AR 24-25.

---

[2] Consultive examiner Dr. Klein, mistakenly recorded Plaintiff's weight at 276 pounds. The ALJ noted that Plaintiff's presentation at the hearing was more consistent with her reported 178lbs than the 276lbs noted by Dr. Klein.  AR 13.

When asked about the onset of her disability, Plaintiff replied that it began on November 1, 2003. Plaintiff said that her most significant condition is the sores she gets in her mouth and on her body. Plaintiff stated that the sores cause pain in her mouth and throat as well as difficulty eating. AR 26-27. Plaintiff said that she had a biopsy of her mouth when she first became sick, which the ALJ noted was in August 31, 2007. AR 35. Plaintiff said that she had not had a biopsy since that time and that her physicians had not followed up on it. AR 35. With respect to the frequency of sores, Plaintiff stated that she got them "off and on" in her mouth and "once in a while" on her body. AR 36. Plaintiff offered as an example that she had one the past week and currently had one on her lip. AR 36. According to Plaintiff, prednisone medication controlled the sores somewhat and had no side effects; she later stated that the medication made her ankles swell. AR 28, 29.

Asked to describe a typical day, Plaintiff said she could no longer play baseball with her grandson and the other children. She gets up around 7:00am to get the kids to school on time. AR 37. She said that hard foods hurt her mouth, such as when she goes to a movie or to have pizza, she cannot eat certain things because it burns her mouth. AR 40. When asked if there was any difference between her condition now and at time she saw the prior ALJ, Plaintiff said that she feels "more tired" now. AR 43. She has difficulty doing activities because she gets tired. AR 44. Activities such as doing the laundry can take up to a week, because she must stop and take breaks. AR 38. She can also no longer go to Table Mountain Casino or Bingo Halls because the smoke irritates her throat. AR 40.

Thereafter, the ALJ elicited the testimony of vocational expert Cheryl Chandler. AR 50. VE Chandler indicated that Plaintiff's past relevant work includes: a dietary aide, medium and unskilled; and a caregiver, medium and unskilled. AR 54-55. VE Chandler opined that Plaintiff could not perform her past relevant work as a caregiver or dietary aide. Plaintiff could however complete the full range of work at the sedentary, unskilled level. AR 56.

The VE was asked to consider several hypothetical questions posed by the ALJ. First, VE Chandler was asked to assume a hypothetical worker of Plaintiff's age, education, and work experience who can lift and carry twenty pounds occasionally and ten pounds frequently, can stand or walk six hours in an eight-hour day, and sit for six hours in an eight-hour day; with no other

limitations or restrictions. AR 55. VE Chandler indicated such an individual could not perform Plaintiff's past relevant work. AR 55. Nevertheless, such a worker could perform sedentary and light unskilled work.

In a second hypothetical, VE Chandler was asked to consider the same worker, with the following abilities and/or limitations: can lift and/or carry fifteen pounds occasionally and seven pounds frequently; no limitations on ability to sit through the course of a workday within ordinary two-hour increments, can stand or walk two hours in an eight-hour work day. VE Chandler testified that this hypothetical worker could not perform Plaintiff's past work, but the individual perform work at the sedentary, unskilled level as it exists in the national economy. AR 56.

In a third hypothetical, the VE was asked to assume a hypothetical worker of Plaintiff's age, education and work history, whom can lift and carry ten pounds occasionally, can sit no more than two hours in an eight-hour workday; can stand no more than one hour in an eight-hour workday and walk for one hour in an eight-hour workday, and whom can only occasionally reach overhead, and push and pull with both hands, should never work at unprotected heights, around moving mechanical parts, and who must avoid humidity, wetness, dust, odors, fumes, and pulmonary irritants, extreme cold, extreme heat, vibrations. VE Chandler testified that no work would be available for such an individual. AR 57.

Plaintiff's counsel asked the VE to consider the same individual as posed in the second hypothetical with an additional limitation that the hypothetical worker has lapses in concentration and persistence on an occasional basis; the VE indicated that such an individual would be unable to perform Plaintiff's past work or any work as it exists in the national economy. AR 57.

**ALJ's Findings**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 8-16.

More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 1, 2003. AR 10. Further, the ALJ identified pemphigus vulgaris and obesity as severe impairments. AR 10. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 11.

1   Based on his review of the entire record, the ALJ determined that Plaintiff has the residual

2   functional capacity ("RFC") to lift and carry twenty pounds occasionally and ten pounds frequently,

3   can walk and/or stand for two hours, as well as sit for six hours, in an eight-hour workday. AR

4   11–20.

5   Next, the ALJ determined that Plaintiff was unable to perform her past relevant work.

6   Nevertheless, considering Plaintiff's age, education, work experience and RFC, the ALJ determined

7   there were jobs that existed in significant numbers in the national economy that Plaintiff could

8   perform. AR 15-17.

9                                   **SCOPE OF REVIEW**

10   Congress has provided a limited scope of judicial review of the Commissioner's decision to

11   deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this

12   Court must determine whether the decision of the Commissioner is supported by substantial

13   evidence.   42 U.S.C. § 405 (g).   Substantial evidence means "more than a mere scintilla,"

14   *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

15   *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable

16   mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record

17   as a whole must be considered, weighing both the evidence that supports and the evidence that

18   detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).

19   In weighing the evidence and making findings, the Commissioner must apply the proper legal

20   standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold

21   the Commissioner's determination that the claimant is not disabled if the Secretary applied the

22   proper legal standards, and if the Commissioner's findings are supported by substantial evidence.

23   *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

24                                        **REVIEW**

25   In order to qualify for benefits, a claimant must establish that he is unable to engage in

26   substantial gainful activity due to a medically determinable physical or mental impairment which has

27   lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C.

28   § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such

1  severity that he is not only unable to do her previous work, but cannot, considering his age,

2  education, and work experience, engage in any other kind of substantial gainful work which exists

3  in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The

4  burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir.

5  1990).

6       Here, Plaintiff argues that the ALJ's findings are not supported by substantial evidence and

7  are not free of legal error because the ALJ failed to: (1) find that Plaintiff's impairments medically

8  equal one or more of the Listed impairments under 20 C.F.R. 404 Appx. Sub P.; (2) properly

9  consider the opinions of treating physician Dr. Bautista; (3) properly evaluate her credibility; and (4)

10  apply a flexible standard to his disability determination.

11                                    **DISCUSSION**

12       ***1. Step Three Findings***

13       Plaintiff contends that the ALJ erred at step three of the sequential analysis by failing to

14  provide sufficient detail for why Plaintiff did not equal Listing 8.03. (Doc. 17 at 4).

15       Listing 8.03 includes:

16       pemphigus, erythema multiforme bullosum, epidermolysis bullosa, bullous
         pemphigoid, dermatitis herpetiformis), with extensive skin lesions that persist for at
17       least 3 months despite continuing treatment as prescribed.

18  S o c i a l   S e c u r i t y   A d m i n i s t r a t i o n   A d u l t   L i s t i n g s ,
    http://www.ssa.gov/disability/professionals/bluebook/8.00-Skin-Adult.htm#8_03. html (last visited
19  Feb. 1, 2012).

20       Specifically, Listing 8.03 requires extensive skin lesions that persist for at least 3 months

21  despite continuing treatment as prescribed. 20 C.F.R. pt. 404, subpt. P, appx. 1, § 8.03. The

22  Regulations define extensive skin lesions as follows:

23       Extensive skin lesions are those that involve multiple body sites or critical body
         areas, and result in a very serious limitation. Examples of extensive skin lesions
24       that result in a very serious limitation include but are not limited to:

25       a.    Skin lesions that interfere with the motion of your joints and that very
               seriously limit your use of more than one extremity; that is, two upper
26             extremities, two lower extremities, or one upper and one lower extremity.

27       b.    Skin lesions on the palms of both hands that very seriously limit your
               ability to do fine and gross motor movements.

28

   c. Skin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit your ability to ambulate.

20 C.F.R. pt. 404, subpt. P, appx. 1, § 8.01.

Although the ALJ found that Plaintiff had a severe impairment of pemphigus vulgaris, the ALJ concluded that her impairment does not meet or medically equal Section 8.03. The ALJ stated, "Plaintiff has not had extensive lesions after 3 months's treatment." AR 11. Plaintiff counters that she has had ulcerative lesions in her mouth since November 2003 despite treatment with prednisone and methotrexate injections. (Doc. 17 at 4).

Plaintiff has not produced medical evidence to support her contention that her pemphigus vulgaris impairment produces "serious limitations," as defined by the Regulations. Plaintiff has not shown that she suffers from extensive skin lesions that very seriously limit the use of more than one extremity or limit her ability to ambulate. As the ALJ found, Plaintiff did not have "extensive" lesions (as defined in the Listings), nor the persistence necessary to meet the Listing.

"Extensive" skin lesions are defined as those that involve multiple body sites or critical body areas, and result in a very serious limitation. Plaintiff's lesions do not involve critical body areas (such as joints in multiple extremities, the palms of both hands, or the soles of both feet), and they do not result in a "very serious limitation" in moving or walking. Rather, Plaintiff has occasional small blisters on her lip, throat, tongue, arm, and underarms. AR 452,

The ALJ also properly found that Plaintiff's condition did not meet the duration requirement of Listing 8.03. AR 11. For skin disorder Listings, an impairment meets the duration requirement if it results in "extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed." *See* Listing 8.00(G). "Persist" means "that the longitudinal clinical record shows that, with few exceptions, your lesions have been at the level of severity specified in the listing." *Id.* Plaintiff's medical records do not show lesions causing "very serious limitations" in multiple or critical body areas, a majority of the time. Plaintiff's clinical record show that she only occasionally had a blister. Additionally, Plaintiff's own testimony confirms that she does not meet the severity or duration requirements. At the hearing, Plaintiff testified she experienced sores in her mouth "off and on" and on her body "once in a while." AR 36. Accordingly, the Court finds Plaintiff did not

meet her burden of showing that the medical findings related to her skin impairment equal in severity and duration to Listing 8.03. *See Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. 404.1525(a)).   Thus, the ALJ committed no error in this regard.

### 2. *Medical Opinion Evidence*

Next, Plaintiff contends the ALJ erred by failing to properly analyze and provide clear and convincing reasons for rejecting the opinions of treating physician Dr. Bautista and physician's assistant Caroline Hanson. (Doc. 17 at 6.).

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).  As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d at 647.  At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).  Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450.  As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456.  In some cases, however, the ALJ can reject

1  the opinion of a treating or examining physician, based in part on the testimony of a nonexamining

2  medical advisor.  *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir. 1989); *Andrews*, 53

3  F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995).  For example, in *Magallanes*, the

4  Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely

5  on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating

6  physicians . . .."  *Magallanes*, 881 F.2d at 752.  Rather, there was an abundance of evidence that

7  supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports from

8  examining physicians, and on testimony from the claimant that conflicted with her treating

9  physician's opinion.  *Id*. at 751-52. The opinions of nonexamining physicians are substantial

10 evidence where they are supported by clinical findings and objective tests.  *Id.*

11       Here, the ALJ provided two reasons for affording Dr. Bautista and physician assistant

12 Hanson's opinion little weight: (1) it was based upon Plaintiff's subjective complaints and (2) it is

13 inconsistent with the objective findings.

14       Where a treating physician's opinion relies primarily on the claimant's discredited subjective

15 complaints, an ALJ may properly reject the opinion on that basis.  *Thomas v. Barnhart*, 278 F.3d

16 948, 957 (9th Cir. 2002); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).  As the ALJ noted, Dr.

17 Bautista based his opinion on reported symptoms such as fatigue, weakness, poor physical fitness,

18 confusion, and stress and not clinical signs or laboratory tests. AR 14.

19       Next, inconsistency with the medical record is a specific and legitimate reason for affording

20 a treating physician's opinion less weight.  *Magallanes v. Bowen*, 881 F.2d at 751 (a lack of

21 supporting clinical findings is a valid reason for rejecting a treating physician's opinion).

22       ALJ Kopicki afforded the opinion of the state agency medical consultant substantial weight

23 because it was consistent with the record and it followed the findings of the prior ALJ.  Dr. Klein

24 examined the change in Plaintiff's condition since the last decision.  Dr. Klein noted that although

25 Plaintiff alleges that she is now more tired, she is able to manage her personal grooming, does house

26 chores, handles her affairs; attends appointments and church services.  The ALJ noted that while

27 these activities are not dispositive of the issue of disability, they suggest some physical capacity.

28 When the ALJ rejects the opinion of an examining physician in reliance on the non-examining

physician, "reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." *Andrews v. Shalala*, 53 F.3d at 1041; *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d at 751-752.

Likewise, the ALJ did not err in rejecting Hanson's opinion. A physician's assistant's opinion is not "an acceptable medical source' under the Social Security Regulations. "Medical sources who are not 'acceptable medical sources,' [include] nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists . . .." SSR 06-03p. As noted by the ALJ, he gave Hanson's opinion little weight "because it is based on subjective allegations and concerns, an issued reserved to the Commissioner." AR 14. Hanson's letter states that Plaintiff's "disease is disabling in the fact that she lives in constant pain, must take pain killers, and it is very hard to eat." AR 465. Hanson does not cite any clinical or diagnostic evidence in support of her opinion in that letter. *Id.* By itself, the failure to provide clinical or diagnostic support for an opinion constitutes a specific and legitimate reason for discounting even a treating doctor's opinion. *See Batson v. Commissioner*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Magallanes v. Bowen*, 881 F.2d at 751 (holding that a lack of supporting clinical findings is a valid reason for rejecting a treating physician's opinion). Likewise, it is a sufficient basis for discounting Hanson's opinion.

Following review of this record, this Court finds the ALJ provided specific and legitimate reasons for affording the examining physician opinion greater weight. Therefore, ALJ Kopicki did not err and his findings are supported by substantial evidence.

### 3. Credibility Findings

Plaintiff also contends the ALJ failed to give a significant justification for rejecting her credibility. (Doc. 17 at 8).

A two step analysis applies at the administrative level when considering a claimant's subjective symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* at 1281-1282. If the claimant

satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so. *Id.* at 1281. The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001), quotations & citations omitted ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

An ALJ can consider many factors when assessing the claimant's credibility. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians. *Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (2007). "An ALJ is not 'required to believe every allegation of disabling pain' or other non-exertional impairment." *Orn v. Astrue*, 495 F.3d at 635 (citation omitted).

The first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Here, the ALJ found that Plaintiff had the severe impairments of pemphigus vulgaris and obesity. AR 10. ALJ Kopicki found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," but that Plaintiff's statements concerning "the intensity, persistence, and limiting effects of these symptoms are not entirely credible to the extent they are inconsistent with...the residual functional capacity assessment." AR 15. This finding satisfied step one of the credibility analysis. *Smolen*, 80 F.3d at 1281-1282.

Second, "In order to disbelieve a claim of excess pain, an ALJ must make specific findings justifying that decision." *Id.* (citing *Magallanes v. Bowen*, 881 F.2d at 755). The findings must

1   convincingly justify the ALJ's rejection of the plaintiff's excess pain testimony.  *Id.* at 602.

2   However, an ALJ cannot be required to believe every allegation of disabling pain.  "This holds true

3   even where the claimant introduces medical evidence showing that he has an ailment reasonably

4   expected to produce some pain."  *Id.* at 603.

5         Specifically, here ALJ Kopicki made the following findings:

6               The claimant reported that she gets up and gets her grandson off to school,
            and tries to work around the house, but has to sit down.   She testified she could
7            manage personal needs (at a slower pace), does laundry once a week and then rests,
            does not shop but makes a list for her daughter, and watches TV but falls asleep from
8            pain medications.  She testified she goes to the mall or attends a movie, and takes the
            kids for pizza. She stated she no longer plays bingo or goes to Table Mountain
9            because the smoke irritates her throat.  She attends church services, can walk 3
            blocks, stand for 30-40 minutes, cannot sit for long periods due to back, can lift 10-
10           15 pounds.  The claimant alleges her condition is worsening as she has increased
            fatigue.
11               After careful consideration I find that claimant's medically determinable
            impairments could reasonably be expected to cause the alleged symptoms; however,
12           the claimant's statements concerning the intensity, persistence and limiting effects
            of these symptoms are not credible to the extent they are inconsistent with the above
13           residual functional capacity assessment.
                 A comparison of the medical evidence considered at the time of the prior
14           decision with the subsequent medical evidence fails to establish any obvious
            worsening of the claimant's impairment. Clinical notes are essentially unremarkable,
15           and show only intermittent outpatient care for management of pemphigus vulgaris.
            The claimant was prescribed methotrexate and prednisone; however, methotrexate
16           was subsequently discontinued because of side effects.  Tongue biopsy was normal.

17  AR 13, internal citations omitted.  The ALJ then went on to point out that the state agency physician

18  found Plaintiff capable of work.

19        ALJ Kopicki found Plaintiff not entirely credible because the objective medical evidence did

20  not support her assertions. This is a proper consideration.  *See* 20 C.F.R. § 416.929 (objective

21  medical evidence can be used in determining credibility; inconsistencies in evidence will support a

22  rejection of credibility); SSR 96-7p (objective medical evidence is a useful indicator to assist in

23  making a reasonable conclusion about credibility and the ability to function).   In making his

24  credibility determination, the ALJ considered that the objective evidence did not support Plaintiff's

25  allegations of a worsening condition. AR 13, 14. The consideration of objective medical evidence

26  in the credibility determination is not only proper, but mandated by regulation. *See* 20 C.F.R. §§

27  404.1529(a), 416.929(a). Second, the ALJ outlined Plaintiff's extensive daily activities, such as

28  taking care of personal affairs, household chores and children, going to the mall, going to movies,

and daily food preparation, which activities, he concluded, "suggest some physical capacity." AR 14. *See Burch*, 400 F.3d at 680-81 (claimant's daily activities of caring for her own personal needs, cooking, cleaning, shopping, and interacting with family "suggest that she is quite functional"). Third, the ALJ observed that Plaintiff's sparse work history, even prior to her alleged onset date, suggested "less than great work motivation." AR 14. This, too, was a proper consideration. *See Thomas*, 278 F.3d at 959 (ALJ's finding claimant had "extremely poor work history" and showed "little propensity to work" supports negative credibility determination); *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001) ("A lack of work history may indicate a lack of motivation rather than a lack of ability."); 20 C.F.R.§§ 404.1529(c)(3), 416.929(c)(3) (in considering symptom evidence, fact-finder "will consider all of the evidence presented, including information about [claimant's] prior work record....").

Finally, the record contains evidence that Plaintiff exaggerated her symptoms at the consultative examination with Dr. Hirokawa. AR 399-403. Dr. Hirokawa noted that Plaintiff gave marginal effort during the exam, suggesting that she was intentionally exaggerating her limitations. AR 399.  Plaintiff also gave Dr. Hirokawa incorrect information, that she had been getting mental health treatment for 2½ years.  AR 400. To the contrary, as Plaintiff later testified, she did not receive any mental health treatment and had gotten a sample of anti-depressant medication from her primary care physician. AR 44, 240, 429. This intentional feigning or exaggerating of symptoms is considered malingering and an ALJ does not have to make affirmative "finding"of malingering, so long as there is affirmative evidence "suggesting" malingering in the record.  *See Carmickle v. Comm'r*, 533 F.3d 1155, 1160 n.1 (9th Cir. 2008). This record evidence, is a sufficient reason to find Plaintiff not entirely credible. *See generally Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (ALJ may use "ordinary techniques of credibility evaluation," including consideration of "the claimant's reputation for lying").

The ALJ's findings are supported by substantial evidence and are free of legal error.

### 4.    *The ALJ's Consideration of Plaintiff's Borderline Age*

Finally, Plaintiff contends that the ALJ mechanically applied the Medical-Vocational Guidelines (Grids) for younger individuals when Plaintiff should have been categorized as "closely

approaching advanced age," even though at the time of the instant motion Plaintiff was four months shy of her fiftieth birthday. Specifically, Plaintiff argues that had the ALJ categorized her as "closely approaching old age," Plaintiff would have been found disabled under grid rule 201.10. Plaintiff was born on April 8, 1961 and as of the date of the ALJ's decision, July 28, 2009, she was approximately 48 years old.

The Secretary can use the age categorization on its grid to decide disability questions. *Calvin v. Heckler*, 782 F.2d 802, 805 (9th Cir. 1986). However, the Secretary should not apply the age categories "mechanically in a borderline situation." 20 C.F.R. § 404.1563(a). An ALJ must consider whether an older age category would be more appropriate when "you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled." 20 C.F.R. § 404.1563(b). "It is incumbent upon the Secretary to decrease his reliance upon the grids in cases where the individual claimant's circumstances approach the upper limits of the grid's guidelines." *Russell v. Bowen*, 856 F.2d 81, 84 (9th Cir. 1988).

In *Russell*, 856 F.2d at 83, petitioner was fifty-nine years and five months old at the time of the final ALJ decision. The court held that petitioner was more than a few days short of the cut-off date, and was in fact closer to the age of fifty-nine than to age sixty. *Id.* at 84. The Court further stressed that "line drawing is reasonable and in accordance with the express language and purpose of these regulations." Id.

On July 28, 2009, the date of the ALJ decision, Plaintiff was far more than 120 days short of the cut-off date–she was approximately two years short. The Ninth Circuit held in *Russell*, that "lines must be drawn at some point, otherwise there would be no efficient way to utilize the Grid system." *Russell*, 856 F.2d at 84. "Therefore, in accordance with Ninth Circuit precedent, the ALJ was not required to consider the application of an older age category in determining whether Plaintiff–whose age at the time of the decision was more than 120 days shy of the cutoff date–was entitled to supplemental security income. Thus there was no error.

17

1

**RECOMMENDATION**

2    Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial

3 evidence in the record as a whole and is based on proper legal standards.  Accordingly, the Court

4 RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of

5 Social Security be DENIED and that JUDGMENT be entered for Defendant Michael J. Astrue and

6 against Plaintiff Rachel Escutia.

7    These findings and recommendations will be submitted to the Honorable Lawrence J. O'Neil

8 pursuant to the provisions of Title 28 of the United States Code section 636(b)(l).  Within fifteen

9 (15) days after being served with these findings and recommendations, the parties may file written

10 objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

11 Findings and Recommendations."  The parties are advised that failure to file objections within the

12 specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d

13 1153 (9th Cir. 1991).

14    IT IS SO ORDERED.

15 **Dated:    February 7, 2012**                      **/s/ Barbara A. McAuliffe**
                                          UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28